UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| RAYCO D. TRAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>J. BUCK; J. MOLDENHAUER; RACHEL SILVA, M.D.; BENJAMIN BEUCHLER, PA-C; TRAVIS D. OLIVES, M.D.; IAN STOKES, R.N.; ABBIE WESTLUND, D.O.; and STEPHEN SMITH, M.D.,<br><br>Defendants. | Case No. 24-CV-57 (NEB/LIB)<br><br>ORDER ACCEPTING REPORT AND RECOMMENDATION |

Rayco Traylor filed a *pro se* complaint against two Brooklyn Park, Minnesota police officers and six Hennepin County Medical Center ("HCMC") employees.[1] (ECF Nos. 1, 1-1.) Against the officers, he brought 42 U.S.C. Section 1983 claims for excessive force and failure to protect, and state law tort claims for assault and battery. Against the HCMC employees, he brought a Section 1983 claim for deliberate indifference to medical needs. He also moved to strike references to his criminal case, to hold a telephonic status

---

[1] J. Buck and J. Moldenhauer are the Brooklyn Park police officers. Rachel Silva, Benjamin Beuchler, Travis D. Olives, Ian Stokes, Abbie Westlund, and Stephen Smith are the HCMC employees. The Court understands the Defendant named in the Complaint as Dr. Silva to be Dr. Rachel Silva, M.D.

conference,² and for production of documents. (ECF Nos. 76, 84, 85.) Defendants moved to dismiss. (ECF Nos. 45, 53.)

In a Report and Recommendation, United States Magistrate Judge Leo I. Brisbois recommended granting Defendants' motions to dismiss. (ECF No. 87 ("R&R").) He also recommended denying Traylor's remaining motions. (*Id*.) Traylor objected to the R&R. (ECF No. 88.)

Typically, the Court reviews de novo those portions of the R&R to which Traylor objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). Instead, Defendants ask for clear error review, arguing that Traylor's objections are "not specific" and "merely repeat arguments to and considered by" Magistrate Judge Brisbois. (ECF No. 90 at 2; ECF No. 92 at 3.) The Court declines and reviews the R&R de novo. For the reasons below, the Court accepts the R&R and overrules Traylor's objections.

## BACKGROUND

The R&R explains the relevant factual history of the case. (R&R at 4–17.) In short, the day after Traylor was arrested, officers sought to transport him from the Brooklyn Park Police Station to the Hennepin County Adult Detention Center. (*Id.* at 4–5.) Traylor demanded medical attention because an officer allegedly groped his genitalia during his initial arrest booking the day before. (*Id.* at 6.) Officers called an ambulance and

---

² This motion was entitled "Motion for Default Judgment." The Court agrees with the R&R that this document is better described as a motion seeking a telephonic conference. (R&R at 1 n.1)

accompanied Traylor to HCMC. (*Id.* at 10.) After doctors examined Traylor, he was discharged, and officers brought him to the Adult Detention Center. (*Id.* at 13–16.) Throughout this sequence of events Traylor was often verbally aggressive and combative. (*Id.* at 15.) At various points, officers had to hold his head down against a gurney, use handcuffs, ankle restraints, a hobble-strap, and (twice) a spit mask. (*Id.* at 7, 11, 15.) The specific incidents that give rise to his claims are discussed below.

## ANALYSIS

### I. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), the Court must accept as true all plausible factual allegations and draw all reasonable inferences for the non-moving party. *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014). The Court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019) (citations omitted). And the Court will not accept "the plaintiff's version of the facts if they are 'blatantly contradicted' by video evidence." *Id.* (cleaned up, citation omitted). "Videos of an incident are necessarily embraced by the pleadings." *Ching ex rel. Jordan v. City of Minneapolis*, 73 F.4th 617, 621 (8th Cir. 2023). The Court agrees with the R&R that the videos from the officers' body worn cameras may be considered. (R&R at 2–3.)

### II. Brooklyn Park Defendants' Motion to Dismiss

#### A. Excessive Force

The Court agrees with the R&R that Traylor's complaint, liberally construed, alleges four incidents of excessive force.

First, Traylor alleges that during his transport to and from the hospital, his handcuffs were "extremely tight" and thus a violation of his right to be free from excessive force. (ECF No. 1-1 ("Compl.") ¶ 16.) But absent evidence of "permanent injury," a single incident of painful handcuffing does not support an excessive force claim. *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990). Traylor does not specifically allege that lasting pain resulted from being handcuffed. Given Traylor's noncompliance during his transition to the ambulance, the officers' use of handcuffs and ankle restraints was objectively reasonable under the circumstances. *See Reed v. City of St. Charles*, 561 F.3d 788, 791–92 (8th Cir. 2009). The Court agrees with the R&R that this claim should be dismissed without prejudice.[3]

Second, Traylor alleges that the force used to manipulate his hands and arms during both the initial handcuffing and the transport to the hospital was unconstitutionally excessive. (Compl. ¶¶ 17–18.) Manipulating an individual's arms, hands, and wrists is not *per se* excessive force. *See McReynolds v. Schmidli*, 4 F.4th 648, 655 (8th Cir. 2021). Given Traylor's resistance and the officers' need to transport him safely to the hospital, it was objectively reasonable to manipulate Traylor's handcuffed wrists

---

[3] As the R&R notes, other court records indicate that Traylor has suffered from nerve pain since at least 2016, long before this incident. (R&R at 22 n.23.)

4

and arms to ensure compliance. *Cf. Franklin v. Franklin Cnty., Ark.*, 956 F.3d 1060, 1062–63 (8th Cir. 2020) (concluding that law enforcement may use significant force, including taser, when individual is "acting violently and uncooperatively"). The Court agrees with the R&R that this claim should be dismissed with prejudice.

Third, Traylor alleges that the force used to press his head down onto the ambulance gurney was excessive. (Compl. ¶¶ 17–18.) Again, given Traylor's resistance, it was objectively reasonable for officers to use necessary force to safely transition Traylor to the ambulance gurney and to secure him with the gurney's soft restraints. *See Hicks v. Norwood*, 640 F.3d 839, 842 (8th Cir. 2011). The Court agrees with the R&R that this claim should be dismissed with prejudice.

Fourth, Traylor alleges that Officer Buck used excessive force when he tackled him in the backseat of the patrol car. (Compl. ¶¶ 27–28.) Prior to Officer Buck's tackle, Traylor attempted to get out of his wheelchair while being transported out of the hospital. He was then placed headfirst and on his side into the back of the patrol car, because of his handcuffed wrists and shackled ankles. At that point, Traylor refused to bend his legs to enable his full entry into the car. (R&R at 14.) Traylor then told Officer Buck, "Man I should spit in your…" right before Officer Buck tackled him. (*Id.*) Officer Buck then held Traylor pressed horizontally on the seat until a spit mask could be placed over his face. (*Id.*) Under the circumstances of the case, the tackle was not objectively unreasonable. Officer Buck's use of force enabled another officer to safely place a spit mask onto Traylor.

Once the mask was on, Officer Buck removed himself. The use of force was not excessive. *Cf. Peterson v. Heinen*, 89 F.4th 628, 636 (8th Cir. 2023) (concluding no excessive force when correctional officers used chemical spray against "recalcitrant" detainee who cursed, threatened, and spat at officers). The Court agrees with the R&R that this claim should be dismissed with prejudice.

### B. Failure to Protect

The Court agrees with the R&R's liberal construction of Traylor's Complaint that a second officer—Officer Moldenhauer—failed to protect him during each of the four alleged incidents of excessive force. (R&R at 30.) "[A] police officer may be liable if he does not intervene to prevent the use of excessive force when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Robinson v. Payton*, 791 F.3d 824, 829 (8th Cir. 2015) (citation omitted). Because his complaint does not sufficiently allege an excessive force claim, Traylor's failure-to-intervene claim fails. *Zubrod v. Hoch*, 907 F.3d 568, 580 (8th Cir. 2018). But the Court disagrees with the R&R that this claim should be dismissed with prejudice. Because Traylor's first excessive force claim—that his handcuffs were "extremely tight"—is dismissed without prejudice, this derivative failure to protect claim should also be dismissed without prejudice. If Traylor successfully repleads that excessive force claim, he could potentially also replead a failure to protect claim.

## C. State Law Claim

The Court agrees with the R&R that the state law assault and battery claims should be dismissed without prejudice. Considering judicial economy, convenience, and fairness to the litigants, the Court declines to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3). Traylor's remaining state-law claims are best heard in Minnesota state court. *See Zubrod*, 907 F.3d at 580–581.

## III.   HCMC Defendants' Motion to Dismiss

Traylor alleges that the six HCMC defendants were deliberately indifferent to his medical needs when they denied him medical care. (Compl. ¶¶ 21, 23-24, 26.) For a pretrial detainee like Traylor to prove a deliberate indifference claim, he must show "(1) he suffered from an objectively serious medical need, and (2) defendants knew of the need yet deliberately disregarded it." *Hall v. Higgins*, 77 F.4th 1171, 1178 (8th Cir. 2023) (citation omitted).

Traylor sues one of the HCMC defendants—Dr. Rachel Silva—in both her official and individual capacity. (R&R at 33; *see* Comp. ¶ 8.) For the other five HCMC defendants, the R&R noted that Traylor did not specify in which capacity they were sued. Thus, the R&R assumed that the five other defendants were sued only in their official capacity. (R&R at 33 (quoting *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007)) However, the Eighth Circuit has recently abrogated *Baker v. Chisom* and adopted a new rule for determining whether a Section 1983 defendant is sued in her individual or official capacity. *See S.A.A.*

7

*v. Geisler*, __ F.4th __, 2025 WL 426999, at *3-6 (8th Cir. 2025) (en banc) (describing new "course of the proceedings" test). Under the "course of the proceedings" test, a request for punitive damages is one indication that a complaint intends to sue the officials in their individual capacity. *Id.* at *5 ("Punitive damages are not available against government officials sued in an official capacity, so inclusion of punitive damages in a complaint suggests an intent to sue the official in her individual capacity."). Thus, the Court will add an analysis of Traylor's deliberate indifference claims against the HCMC defendants in their individual capacity.

### A. HCMC Defendants in Their Official Capacity

"A suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). The HCMC Defendants' employer is Hennepin County. And because Hennepin County is like a municipality, Traylor must show that his "constitutional rights were violated by an action pursuant to official municipal policy or misconduct so pervasive among non-policymaking employees of the municipality as to constitute a 'custom or usage' with the force of law." *Mitchell v. Kirchmeier*, 28 F.4th 888, 899 (8th Cir. 2022) (citation and quotation marks omitted).

Even construing the complaint liberally in Traylor's favor, the only allegation related to any HCMC employee is that "upon arrival[,] defendant [Dr. Travis] Olives

8

approached and asked what the concern was." (Compl. ¶ 21.) This falls far short of sufficiently pleading an official municipal policy or custom which caused an alleged constitutional violation. The Court agrees with the R&R that this claim should be dismissed without prejudice.

### B. Defendant Dr. Rachel Silva in Her Individual Capacity

Traylor identified Dr. Silva as the "head doctor at Hennepin County Jail." (Compl. ¶ 8.) But for a Section 1983 claim to proceed past the motion to dismiss stage, a plaintiff must allege that the defendant "was personally involved in or had direct responsibility for incidents that injured him." *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985). Although he makes allegations about his medical treatment at Hennepin County Jail, (*see* Compl. ¶¶ 33-36), none of these allegations indicate that Dr. Silva was personally involved. The Court agrees with the R&R that this claim should be dismissed without prejudice.

### C. HCMC Defendants in Their Individual Capacity

Traylor must allege that these individuals were "personally involved in or had direct responsibility for incidents that injured him." *Martin*, 780 F.2d at 1338. Of the five individuals—Beuchler, Olives, Stokes, Westlund, and Smith—Traylor makes a factual allegation about only Olives: that "upon arrival" at HCMC "defendant [Dr. Travis] Olives approached and asked what the concern was." (Compl. ¶ 21.) There are no allegations that reference any of the other defendants. Thus, the complaint fails to sufficiently allege

9

that any of the HCMC defendants were personally involved in any deliberate indifference. The Court concludes that this claim should be dismissed with prejudice.

## IV. Traylor's Remaining Motions

The R&R denied Traylor's motion to strike, motion for a conference, and motion for production of documents as moot. The Court agrees with the R&R's recommendations.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings, IT IS HEREBY ORDERED THAT:

1. Plaintiff's objection (ECF No. 88) is OVERRULED;

2. The Report and Recommendation (ECF No. 87) is ACCEPTED;

3. Plaintiff's Complaint (ECF No. 1) is DISMISSED as described herein; and

4. Plaintiff's Motion to Strike, Motion for Default Judgment, and Motion for Production of Documents (ECF Nos. 76, 84, 85) are DENIED AS MOOT.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: February 18, 2025

BY THE COURT:

s/Nancy E. Brasel
Nancy E. Brasel
United States District Judge